IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KRAIG DOUGLAS WARD,

   Plaintiff,

vs.            Civil Action No. ADC-16-3443

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration,

   Defendant.

## MEMORANDUM OPINION

On October 14, 2016, Kraig Ward ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 18–19) and Plaintiff's response to Defendant's motion, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 18) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED, and the decision of the Social Security Administration is AFFIRMED.

### PROCEDURAL HISTORY

On December 16, 2010, Plaintiff filed a Title XVI application for SSI, alleging disability beginning on December 31, 2009. His claims were denied initially and upon reconsideration on April 20, 2011 and October 14, 2011, respectively. Subsequently, on November 30, 2011, Plaintiff filed a written request for a hearing and, on January 23, 2013, a hearing was held in Dover, Delaware before an Administrative Law Judge ("ALJ"). On April 5, 2013, the ALJ

1

rendered a decision finding that Plaintiff was not disabled. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on June 20, 2014, the Appeals Council vacated the 2013 hearing decision and remanded the case for further administrative action, including an opportunity for a supplemental hearing and issuance of a new decision. A remand hearing was held in Dover, Delaware on March 25, 2015, and on April 29, 2015, the ALJ again denied Plaintiff's claim for SSI, ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act [("the Act")] since December 16, 2010, the date the application was filed." ECF No. 12-3 at 14. Plaintiff filed another appeal, and on August 30, 2016, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On October 14, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's denial of Plaintiff's disability application.[1] On June 16, 2017, Plaintiff filed a Motion for Summary Judgment. On August 18, 2017, Defendant filed a Motion for Summary Judgment, and Plaintiff filed a response. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement, Defendant's Motion for Summary Judgment, and Plaintiff's Response to Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence.

---

[1] On October 6, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the [Act], [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." (citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson*, 434 F.3d at 653 (internal citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight

3

accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that he is disabled within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such a severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R.

§ 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.*, at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of December 16, 2010. ECF No. 12-3 at 15. At step two, the ALJ found that Plaintiff had the severe impairments of type I diabetes mellitus with gastroparesis and neuropathy. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 17. At step four, the ALJ determined that Plaintiff has the RFC "to perform light work as defined in 20 CFR 416.967(b)" with "[a] limitation to lifting 20 pounds only occasionally" and "[s]tanding and walking a combined total of only six hours a day." *Id.* at 18, 20. The ALJ then determined that Plaintiff had no past relevant work. *Id.* at 22. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the [Act], since December 16, 2010, the date the application was filed." *Id.* at 23.

## DISCUSSION

Where a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must then assess the claimant's RFC. RFC assesses "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(c). Plaintiff solely contends

7

that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 18-2 at 9. Plaintiff relies on *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017), to argue that the ALJ applied an improper legal standard to discredit Plaintiff's subjective symptoms and his treating physician's opinions which supported his limitations. ECF No. 18-2 at 9. Defendant counters that *Lewis* has no bearing on this case because the ALJ identified a proper basis beyond objective evidence to support his credibility finding, which included Plaintiff's own statements, his daily activities, medical source statements, treatment records, and the record as a whole. ECF No. 19-1 at 7. In addition, Defendant argues that the ALJ properly considered and weighed Plaintiff's treating physician's opinion, giving his opinions some weight to the extent that the record supported them. *Id.* at 8. The Court agrees with Defendant.

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 404.1545(a) (ordering ALJ to consider entire record); SSR 96-8p, at *2 (defining RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Thus, the ALJ must also consider, and may rely on, the opinions of non-treating sources. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). As is the case with the opinions of physicians and psychologists, the ALJ is required to weigh the opinions of non-treating sources and explain the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling 96-8p provides the proper framework for evaluating a claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p). "Only after that may [RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96-8p).

Plaintiff first challenges the standard which the ALJ utilized in evaluating his credibility. The Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

9

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all of the available evidence, including the claimant's medical history, medical signs, statements by the claimant and his treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3).

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate his allegations of pain. 20 C.F.R. § 404.1529; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability).

In *Lewis*, the claimant "contend[ed that] the ALJ improperly discounted her subjective evidence of pain based solely on the lack of objective evidence of pain intensity." 858 F.3d at 866. The Fourth Circuit agreed and stated that the regulations required the ALJ to "not reject [the claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." *Id.* (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). Accordingly, the Fourth Circuit found that a claimant's "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings" and that requiring objective medical evidence to support a claimant's evidence of pain intensity improperly increases the claimant's burden of proof. *Id.* Thus, the Fourth Circuit vacated and remanded for further proceedings so that the ALJ could apply an appropriate legal

standard to weigh the claimant's evidence of pain intensity and the opinions of her treating physicians and adequately explain his decision to deny the claimant's benefits. *Id.* at 870.

In the present case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, yet he determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." ECF No. 12-3 at 19. The ALJ summarized Plaintiff's testimony at the remand hearing as follows:

> [Plaintiff] testified at the 2015 remand hearing that he continues to suffer with uncontrolled blood sugar levels and neuropathy. He described the effect of his fluctuating blood sugar levels and his episodes of vomiting with gastroparesis. He takes the maximum dose of gabapentin, which helps alleviate the tinging [in] his hands, legs, and feet. He described decreased sensitivity in his fingers, but he is able to play guitar and use a computer. He is not in a band, but gets together with one friend to play guitar [e]very couple of weeks, for a few hours. [Plaintiff] does not have a driver's license because he is not stable enough to drive. He currently lives with his parents. He goes grocery shopping with them and tries to keep his room clean. He spends a lot of time sleeping or lying down. He cannot do anything more than 45 minutes before his legs start hurting and the physical activity causes his blood sugar to drop. He can stand for a little over a half an hour, and can lift 25 to 30 pounds. He does not have problems carrying things with his hands.

ECF No. 12-3 at 18–19. In finding that Plaintiff's allegations regarding his pain were "not fully credible," the ALJ expressed the following rationale:

> Despite his complaints of disabling nerve pain, there is no indication that [Plaintiff] has sought treatment with a neurologist or pursued testing to confirm the source of the pain. He also has not fully complied with his diabetic self-care, to gain better control of his diabetes and perhaps reduce the extent of his pain. In addition, [Plaintiff] is able to perform a range of daily activities. His testimony that he can stand for only 30 minutes and spends a lot of his time lying down is not reflected in his treatment records. The fact that [Plaintiff] has not reported the extent of his alleged

> functional impairment to his health care providers is inconsistent
> with his allegations.

*Id.* at 21. Furthermore, the ALJ pointed out that Plaintiff "testified that he has no problems using his hands for lifting, and he is able to play guitar [for "a few hours" every couple of weeks] and use a computer." *Id.* at 20.

The ALJ further described Plaintiff's medical history, including the treatment notes of his endocrinologist, which reflected that in early 2013, Plaintiff's blood sugar was "significantly improved" since he started using an insulin pump, that his foot examinations were essentially normal and he had no neurological or motor deficits, and that in December 2014, Plaintiff's stomach was better, but his sugars were worse because he was eating fast food, drinking beer, and not counting carbs. *Id.* at 19. The ALJ further discussed the conclusions of a consultative doctor that Plaintiff had no physical limitations and that his objective examination findings did not support Plaintiff's complaints of chronic tingling in his hands and calves and difficulty standing for more than thirty minutes. *Id.* at 20. The ALJ noted that Plaintiff's "[t]reatment records document normal findings, with no motor or neurological deficits other than occasional reduction in sensation in [Plaintiff]'s toes. He is typically found to have full motor strength in all extremities, a normal gait, and full range of motion in all joints." *Id.* Moreover, Plaintiff's primary care records reflected that Plaintiff reported no difficulty walking and no limitations in reaching, handling, or fingering. *Id.*

While the ALJ impermissibly relied on some impermissible objective medical evidence, he also relied on sufficient subjective evidence to find that Plaintiff was not credible. First, the ALJ relied on Plaintiff's own testimony that he can lift items with his hands and play guitar. The ALJ also correctly cited to Plaintiff's seeming disinterest in seeking ways to "perhaps reduce the extent of his pain" as evidence that his pain was not as severe as Plaintiff alleged. *See Hinton v.*

*Berryhill*, No. MJG-16-4043, 2017 WL 4404441, at *3 (D.Md. Oct. 4, 2017); *see also Mickles*, 29 F.3d at 930 ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."). Furthermore, the ALJ noted the inconsistencies in Plaintiff's complaints to his treating and consultative physicians, which contradicted his testimony that he could stand for only thirty minutes, and the fact that Plaintiff is able to perform a range of daily activities, including going grocery shopping with his parents and keeping his room clean. ECF No. 12-3 at 19–21. Thus, the ALJ's detailed evaluation of the record evidence against Plaintiff's statements regarding his symptoms amply supports the ALJ's conclusion that Plaintiff's alleged limitations were not entirely credible, and the ALJ properly evaluated Plaintiff's credibility, supporting his findings with substantial evidence.

Plaintiff also challenges the weight which the ALJ gave to his primary care physician, Dr. Robert Denitzio, arguing that substantial weight does not support the ALJ's reasoning for affording less than controlling weight to Dr. Denitzio's opinions. A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *see Lewis*, 858 F.3d at 867 (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927 (c)(2)) (stating that where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight). Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is

inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). Moreover, "the testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F.App'x 65, 67 (4th Cir. 2014) (per curiam).

Furthermore, a medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ alone. *See* 20 C.F.R. § 416.927(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 416.927(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 416.927(c)(4); *see also Dunn v. Colvin*, 607 F.App'x 264, 268 (4th Cir. 2015).

In the present case, the ALJ determined that he should not give Dr. Denitzio's opinions controlling weight:

Dr. Denitzio opined that [Plaintiff] could lift 20 pounds occasionally, stand/walk about two hours a day, and sit at least six hours, with additional postural limitations. He also indicated that [Plaintiff] would likely be "off task" more than 15% of the workday due to the interference of his symptoms with his attention and concentration, that he was capable of low stress work, and that he would likely miss more than four days of work a month. Dr. Denitzio noted that [Plaintiff] would have episodes of vomiting and episodes of ketoacidosis requiring trips to the emergency room, probably once a week. The limitations indicated are almost identical to Dr. Denitzio's prior medical source statement, except he opined in 2011 that [Plaintiff] would be off task only 10% of the day and miss about four days of work a month.

The undersigned has considered both of Dr. Denitzio's opinions in the context of the expanded record and does not give them controlling weight, as the medical evidence does not support all of the limitations indicated and they are inconsistent with Dr. Gauthier's report. Some weight is afforded the exertional limitations, as they are consistent with [Plaintiff]'s testimony that he can lift 25 to 30 pounds. The medical evidence does not support his opinion regarding [Plaintiff]'s ability to stand and/or walk only two hours a day or the postural limitations included in the medical source statements. The undersigned also gives little weight to Dr. Denitzio's findings regarding the amount of time [Plaintiff] would be off task or the number of days he would miss work. His treatment records do not document any reported symptoms or examination findings that would support such conclusions. He notes no mental status abnormalities to suggest that [Plaintiff] had any deficiencies in attention or concentration. There is also nothing in his records to corroborate his opinion that [Plaintiff] would miss four or more days of work a month. [Plaintiff]'s testimony regarding his bouts of vomiting is not confirmed in Dr. Denitzio's records.

The undersigned gives no weight to a letter written by Dr. Denitzio in February 2015, stating that [Plaintiff] remains "disabled" due to the combination of his impairments and is unable to do any kind of work. As set forth above, the medical evidence does not support a disabling [RFC]. Moreover, opinions regarding a claimant's ability to work are administrative findings that may determine whether an individual is disabled, and so they are reserved for the Commissioner (SSR 96-5p).

ECF No. 12-3 at 21–22 (record citations omitted). The ALJ also gave significant weight to the opinion of a consultative medical expert who found that Plaintiff could lift up to 50 pounds occasionally, sit eight hours a day, stand six hours, and walk six hours, except the limitation to lifting, because while "[g]iving some credence to [Plaintiff]'s pain complaints, the record supports greater limitations on lifting and a limitation to standing and/or walking a combined total of only six hours a day." *Id.* at 22. Finally, the ALJ gave little weight to the state agency physical assessments which relied in part on Dr. Denitzio's 2011 medical source statement and concluded that Plaintiff "could lift up to 20 pounds occasionally and stand and/or walk two hours a day" because the medical evidence does not support such limitations on standing and walking or postural limitations. *Id.*

The Court finds that substantial evidence supports the weight that the ALJ gave to Dr. Denitzio's opinions because they are not consistent with his treatment notes or other evidence in the record. *See Burch v. Apfel*, 9 F.App'x 255, 259 (4th Cir. 2001) (per curiam) (finding that the ALJ did not err in giving a treating physician's opinion little weight where the physician's opinion was not consistent with her own progress notes); *Craig*, 76 F.3d at 590 (upholding the ALJ's rejection of the treating physician's opinion because the record contained persuasive contradictory evidence, the opinion was conclusory and based on claimant's subjective reports, and the treating physician's own notes contradicted his opinion).

In addition, the ALJ explained why he believed that Dr. Denitzio's opinions were not supported by objective medical evidence and the inconsistencies between Dr. Denitzio's opinions and the opinions of a consultative doctor. ECF No. 12-3 at 21; *cf. Lewis*, 858 F.3d at 867 (reasoning that the ALJ failed to adequately explain why he did not give the opinions of the claimant's treating physicians "controlling weight" where the ALJ "point[ed] to nothing in the

record indicating that any non-treating sources disputed that the medical opinions of Drs. Jacob and Mahmood were not 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Unlike the claimant in *Lewis* who endured various adjustments to her medications as they lost effectiveness over time, 858 F.3d at 867, Plaintiff's medical records show that he did not adhere to recommended medical changes which may have improved his symptoms nor did he seek additional treatment for his symptoms. ECF No. 12-3 at 19–21. Furthermore, the ALJ appropriately determined to not give controlling weight to Dr. Denitzio's opinions where two non-treating medical experts' opinions contradicted them. ECF No. 12-3 at 21–22; *cf. Lewis*, 858 F.3d at 868 (reasoning that the ALJ failed to appropriately weigh the opinions of the claimant's treating physicians where the opinions of outside physicians bolstered the opinions of the treating physicians, but were ignored and where the record directly contradicted the ALJ's finding that the claimant malingered or exaggerated her pain). The Court "may not reweigh th[e] evidence, and [the Court] must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether [Plaintiff] was disabled." *Sharp v. Colvin*, 660 F.App'x 251, 258 (4th Cir. 2016).

Lastly, it was proper for the ALJ to give no weight to Dr. Denitzio's letter which simply stated his opinion that Plaintiff is disabled due to his impairments because the Social Security regulations reserve the dispositive administrative finding on the issue of disability to the ALJ. 20 C.F.R. § 416.927(d). Consequently, substantial evidence supports the weight afforded by the ALJ to Dr. Denitzio's opinions.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 18) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 24 October 2017

A. David Copperthite
United States Magistrate Judge